UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANCES W. KOHEN, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) **COMPLAINT AND DEMAND** ) **FOR JURY TRIAL** ) |
| MEL S. HARRIS AND ASSOCIATES, LLC, | ) ) |
| Defendant. | ) ) ) ) ) |

## INTRODUCTION

1. This action arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. A supplemental claim arises under the New York General Business Law ("GBL") § 349 (prohibiting deceptive acts and practices). The claims stated here involve blatant violations of the FDCPA through repeated abusive, deceptive and unauthorized acts and communications regarding a consumer debt.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is conferred by 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 because this dispute predominantly involves issues of federal law—Defendant has violated numerous provisions of the FDCPA.

3. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

4. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Defendant expected or reasonably should have expected the acts alleged in this Complaint would have consequences in this judicial district because Defendant caused the transactions and occurrences alleged in this action to take place in this judicial district.

6. Further, Defendant derives substantial revenue from interstate commerce.

7. Venue in this district is proper as Defendant regularly transacts business and derives substantial revenue from services rendered here; as such they have engaged in a persistent course of conduct within this district and state. In addition, the conduct underlying this action occurred in this district.

## PARTIES

8. Plaintiff FRANCES W. KOHEN ("Ms. Kohen") is a natural person who has resided at all times relevant to this Complaint in New York County, New York.

9. Ms. Kohen is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

10. Defendant MEL S. HARRIS AND ASSOCIATES, LLC ("Mel Harris" or "the Defendant") is a limited liability law firm organized and existing under the laws of the State of New York.

11. Mel Harris' principal place of business is located at 5 Hanover Square, 8th Floor, New York, New York 10004.

12. The principal purpose of Mel Harris' law practice is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone, and Mel Harris regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

13. Thus, Mel Harris is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

14. All acts done by Mel Harris' employees or agents were done on Mel Harris' behalf.

15.     The debt underlying this case arose out of a transaction used primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

## FACTUAL ALLEGATIONS

16.     Mel Harris, on behalf of debt-buyer LR CREDIT 23, LLC, has communicated with Ms. Kohen several times in an effort to collect a debt owed by her.  Over the course of its effort, Mel Harris repeatedly violated several provisions of the FDCPA, specifically those relating to abusive and deceptive communications as well as unauthorized acts.  To date, some of these violations are ongoing.

*The Initial Deceptive Communications*

17.     Ms. Kohen first became aware of the existence of the subject debt when she received a dunning letter from Defendant dated May 15, 2012.  A copy of the May 15, 2012 dunning letter (the "First Dunning Letter") is attached here as Exhibit A.

18.     The First Dunning letter, which demands payment of outstanding indebtedness owed to the original creditor Citibank South Dakota NA/West Marine Cobrand Consu, states specifically "no attorney with this firm has personally reviewed the particular circumstances of your account."  Id.

19.     Ms. Kohen did not recognize the alleged outstanding debt but due to various work and life circumstances she was unable to promptly respond to the First Dunning Letter.

20.     Subsequently, Ms. Kohen received a second dunning letter dated June 22, 2012.  A copy of the June 22, 2012 dunning letter (the "Second Dunning Letter") is attached here as Exhibit B.

21.     Referring to Defendant's client, the Second Dunning Letter informs Ms. Kohen of an "exciting way" to "save money and liquidate" the outstanding balance by offering "any

reasonable settlement amount." All Ms. Kohen had to do, according to the Second Dunning Letter, was to contact Defendant to discuss "how much money [she] will be saving." Id.

22. The Second Dunning Letter is signed by "Mel S. Harris, Esq." Id. However, upon information and belief, Mel S. Harris did not personally sign the Second Dunning Letter. Rather, it appears the signature was either affixed by another individual or superimposed on the letter.

23. Further, supposing Mel S. Harris himself signed the Second Dunning Letter, his signature contradicts the statement contained in the First Dunning Letter that no attorney had personally reviewed the circumstances of Ms. Kohen's account.

24. In either event, the signature of Mel S. Harris, Esq. on the Second Dunning Letter caused significant confusion and anxiety to Ms. Kohen.

*The Abusive Treatment Regarding an Agreement to Settle the Debt*

25. Promptly upon receiving the Second Dunning Letter, Ms. Kohen called the account representative—Mr. Spratley—as indicated on the letters in order to discuss the "money she will be saving" by liquidating the outstanding debt.

26. Ms. Kohen expected to have a conversation about a "reasonable settlement;" instead, she was verbally abused by Mr. Spratley.

27. Among other statements, Mr. Spratley threatened Ms. Kohen with "debtor's jail" and the Defendant's taking of other unauthorized legal actions against her.

28. Contrary to the statements made in the Second Dunning Letter, Mr. Spratley was rude and pointedly unreasonable: he refused to settle the debt or consider any installment plan offered by Ms. Kohen.

29.     Despite Defendant's rudeness, Ms. Kohen sincerely wished to settle the outstanding debt. Thus, on September 7, 2012, she again called Mr. Spratley and attempted to reach a settlement agreement.

30.     On the September 7, 2012 call Mr. Spratley was again aggressively abusive.

31.     He emphatically refused any offer of settlement by Ms. Kohen unless she sent Defendant an upfront payment of $700 that day, or a payment of $350 that day and another $350 within one month.

32.     Ms. Kohen was so upset by Mr. Spratley's verbal abuse that she immediately called the Federal Trade Commission and filed a complaint against Defendant. The reference number for Ms. Kohen's complaint, filed on September 7, 2012, is #40233202.

33.     Although Ms. Kohen filed a complaint with the Federal Trade Commission, she was still alarmed by Mr. Spratley's threats of debtor's jail and legal action. Therefore she mailed the demanded upfront payment of $700 to Defendant on September 29, 2012.

34.     Together with the $700 payment, Ms. Kohen included a handwritten note (on a copy of the First Dunning Letter) stating this was her third attempt to request payment arrangements and requesting Mr. Spratley to call her when he was ready to collect the debt. A copy of Ms. Kohen's check for $700 and handwritten note is attached here as Exhibit C.

35.     In response to Ms. Kohen's payment and handwritten note, Defendant sent a letter dated October 3, 2012 titled "Payment Arrangement" stating the following terms for a settlement: a payment of $700 on or before 10/08/2012 and monthly payments in the sum of $100 commencing 11/08/2012 until the debt is fully paid. A copy of the October 3, 2012 letter (the "First Settlement Letter") is attached here as Exhibit D.

36.     As stated above, when Ms. Kohen received the First Settlement Letter, she had already made the initial payment of $700.  However, the First Settlement Letter did not confirm or acknowledge her $700 payment.

37.     Ms. Kohen did not sign the First Settlement Letter.

38.     Again troubled by a confusing communication from Defendant, Ms. Kohen promptly called Mr. Spratley to confirm the terms of the "payment arrangement."  In that call, Ms. Kohen requested that the monthly payments of $100 be due on the 15th of each month (beginning in November 2012) because the 8th of each month is out of sync with her other billing cycles.

39.     In response to Ms. Kohen's call, Defendant sent a second letter, dated October 4, 2012, in which the monthly payments of $100 would commence on November 15, 2012.  A copy of the October 4, 2012 letter (the "Second Settlement Letter") is attached here as Exhibit E.

40.     Ms. Kohen signed the Second Settlement Letter, executed the authorization agreement for recurring monthly payments on the 15th of each month beginning in November 2012 and forwarded them to Defendant.

*Subsequent Unauthorized Acts and Deceptive Communications*

41.     Completely disregarding the terms of the executed Second Settlement Letter and recurring payment authorization, Defendant withdrew the monthly $100 payment from Ms. Kohen's account on November 7, 2012.  A copy of the transaction from Ms. Kohen's bank account is attached here as Exhibit F.

42.     Ms. Kohen promptly called Defendant and informed them that, per the terms of the Second Settlement Letter, she authorized monthly payments on the 15th of each month.  An unknown representative of Defendant told Ms. Kohen at that time that the payments would be withdrawn from her account "on or near the date" in the Second Settlement Letter.

6

43.     Apparently Defendant simply ignored Ms. Kohen's call and continues to violate the Second Settlement Letter.

44.     In January 2013, the monthly payment was withdrawn from Ms. Kohen's account on the 7th.  A copy of the transaction from Ms. Kohen's bank account is attached here as <u>Exhibit G</u>.

45.     On or around January 16, 2013, Ms. Kohen received a call from another representative of Defendant—upon information and belief Ms. Aurora Nunez—who informed her that Defendant made an error on Ms. Kohen's December monthly payment.

46.     Specifically, Ms. Nunez stated that Defendant withdrew the money from someone else's account and needed Ms. Kohen's permission to make a withdrawal for the December payment.

47.     In that call, Ms. Nunez informed that Ms. Kohen's monthly payment was due on the 5th of each month.

48.     Perplexed, Ms. Kohen informed Ms. Nunez that per the terms of the Second Settlement Letter and authorization for recurring payments her monthly payment was due on the 15th of each month.  Ms. Nunez insisted that the monthly payment was due on the 5th of each month, but she agreed to change the billing cycle to the 15th.

49.     However, Defendant continues to disregard the terms of the Second Settlement Letter, and Ms. Kohen's authorization for recurring payments, by withdrawing the monthly payment prior to the 15th of each month.

50.     In addition to withdrawing payments from Ms. Kohen's account in an unauthorized manner, Defendant continues to send confusing and deceptive communications.

51.     On or around January 26, 2013, Ms. Kohen received a letter from Ms. Nunez stating that her "check number 999 in the sum of $100.00 has been returned unpaid.  Kindly correct this

situation forthwith by remitting the sum of $100.00 to this office by return mail." A copy of the letter dated January 23, 2013 is attached here as <u>Exhibit H</u>.

52. The January 23, 2013 letter from Defendant contains false statements that are confusing and deceptive, in part because they fail to identify which monthly payment was allegedly returned unpaid.

53. Assuming the alleged returned check refers to the December monthly payment, any unpaid amount is due to Defendant's own error. As explained above, Ms. Nunez, previously informed Ms. Kohen that Defendant failed to withdraw Ms. Kohen's payment for December because they attempted to withdraw the amount from someone else's bank account.

54. In any event, Ms. Kohen, who has overdraft protection on her checking account, certainly did not cause a check to be returned unpaid to Defendant. Any check for which insufficient funds exist in Ms. Kohen's checking account would be automatically paid from her savings account.

## FIRST CLAIM FOR RELIEF
(Violations of the FDCPA)

55. Ms. Kohen repeats, realleges and incorporates by reference the foregoing paragraphs.

56. The Defendant violated FDCPA §§ 1692d, 1692d(1), 1692d(2), 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(7), 1692e(10), 1692f, 1692f(2), 1692f(3) and 1692f(4) through the following acts and omissions:

    a. Making false, misleading, and deceptive statements on the First Dunning Letter regarding an attorney's (lack of) review of the circumstances of Ms. Kohen's case in violation of §§ 1692e, 1692e(2), 1692e(3), 1692e(10);

b. Making false, misleading, and deceptive statements in the Second Dunning Letter regarding an attorney's signature on the letter, and by implication an attorney's review of Ms. Kohen's case in violation of §§ 1692e, 1692e(2), 1692e(3), 1692e(10);

c. Making false, misleading, and deceptive statements in the Second Dunning Letter regarding an "exciting way" for Ms. Kohen to save money when Defendant had no intention of saving Ms. Kohen money in violation of §§ 1692e, 1692e(2), 1692e(10), 1692f;

d. Making false, misleading, and deceptive statements in the Second Dunning Letter regarding Defendant's authority and willingness to accept "any reasonable settlement amount" from Ms. Kohen in violation of §§ 1692e, 1692e(2), 1692e(10), 1692f;

e. Verbally abusing Ms. Kohen when she called Defendant around June 22, 2012 to discuss a reasonable settlement amount in violation of §§ 1692d, 1692d(1), 1692d(2), 1692f;

f. Threatening Ms. Kohen with "debtor's jail" and other unauthorized legal actions in violation of §§ 1692d, 1692d(1), 1692d(2), 1692f;

g. Verbally abusing Ms. Kohen when she called Defendant on September 7, 2012 again attempting to discuss a settlement amount in violation of §§ 1692d, 1692d(1), 1692d(2), 1692f;

h. Failing to acknowledge Ms. Kohen's initial payment of $700 in the First Settlement Letter in violation of §§ 1692e, 1692e(2), 1692f;

i. Withdrawing the recurring monthly payment amounts prior to the date for which Ms. Kohen authorized the withdrawal in violation of §§ 1692d, 1692e, 1692f, 1692f(2), 1692f(4);

j. Making repeated false, misleading, and deceptive statements to Ms. Kohen regarding the date on which Defendant would withdraw the recurring monthly payment amount in violation of §§ 1692e, 1692e(2), 1692e(10), 1692d, 1692f;

k. Making false, misleading, and deceptive statements regarding an alleged "returned unpaid" check from Ms. Kohen's account in violation of §§ 1692e, 1692e(2), 1692e(10), 1692d, 1692f; and

l. Continuing to withdraw the recurring monthly payment on a date that was not authorized by Ms. Kohen in violation of §§ 1692d, 1692e, 1692f, 1692f(2), 1692f(4).

57. As a result of the above violations of the FDCPA, Defendant is liable to Ms. Kohen for actual damages as set forth in this Complaint, statutory damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k.

**SECOND CLAIM FOR RELIEF**
**(Violations of New York GBL § 349)**

58. Ms. Kohen repeats, realleges and incorporates by reference the foregoing paragraphs.

59. The New York GBL § 349 declares unlawful deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the State of New York.

60. The conduct complained of in this action occurred during, and in furtherance of, Defendant's for-profit business enterprise of pursuing consumers for defaulted debt obligations.

61. At all times relevant to this action, Defendant's deceptive acts and practices that gave rise to the claims herein occurred while Defendant conducted its business of collecting consumer debts.

62. Defendant's acts and practices have been directed at consumers as reflected in its correspondence and activities. Defendant's acts and practices have a broad impact on the New York consuming public.

63. Defendant's collection acts are part of a recurring practice against consumers in furtherance of its business model of increasing debt volume while decreasing the costs of each case, thus enhancing profitability.

64. Defendant's offending collection practices have the capacity and tendency to deceive and mislead a significant percentage of consumers in a material way because they deprive consumers of state and federal rights and protections. These acts contribute to an increasing number of personal bankruptcies, and lead to marital instability and job loss, all of which are significant social concerns that applicable federal and state consumer protection laws were designed to prevent.

65. The acts and omissions complained of in this action under the FDCPA amount to "deceptive acts and practices" as defined under the New York GBL § 349 and the case law interpreting it.

66. Some or all of the FDCPA violations alleged here amount to *per se* violations of the New York GBL § 349.

67. As a result of Defendant's deceptive acts and practices, Ms. Kohen has suffered actual damages as alleged below.

68. As a result of these violations of the New York GBL § 349, Ms. Kohen is entitled to an injunction barring Defendant from engaging in deceptive acts and practices, including further attempts to collect the debt in a manner other than that authorized by Ms. Kohen, and to recover actual damages, three times the actual damages up to $1,000, costs and reasonable attorneys' fees pursuant to New York GBL § 349(h).

## ACTUAL DAMAGES

69.     Ms. Kohen alleges as actual, pecuniary damages the amounts she has expended in consultations with the undersigned attorney regarding Defendant's abusive acts and practices, as well as postage, facsimile and related charges.

70.     Ms. Kohen has suffered other actual, non-pecuniary damages, including emotional distress, loss of tranquility, anxiety, worry, fear, fright, indignation, lost concentration at work, loss of happiness, loss of sleep and other stress due to Defendant's misconduct.

**WHEREFORE**, Ms. Kohen respectfully requests a trial by jury and also requests that judgment be entered against Defendant for the following:

a.      On the FIRST CLAIM FOR RELIEF (FDCPA), statutory damages, actual damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k;

b.      On the SECOND CLAIM FOR RELIEF (New York GBL § 349), injunctive relief, actual damages, three times the actual damages up to $1,000, costs and reasonable attorneys' fees pursuant to NYGBL § 349(h); and

c.      For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Ms. Kohen demands a trial by jury as to all issues so triable.


Dated:  New York, New York
        February 19, 2013


                                                _____
                                                Jesse Langel, Esq. (JL-7079)
                                                The Langel Firm
                                                *Attorney for Plaintiff*

225 Broadway, Suite 700
New York, NY 10007
646-290-5600
jesse@langellaw.com

Case 1:13-cv-01183-PAE   Document 1   Filed 02/21/13   Page 13 of 13